UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ANNE O'BOYLE, Individually and on Behalf of ) Case No.: 18-cv-1016
All Others Similarly Situated, )
) **CLASS ACTION COMPLAINT**
Plaintiff, )
v. )
) **Jury Trial Demanded**
UNIVERSAL FIDELITY LIMITED )
PARTNERSHIP, )
)
Defendant. )

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Anne O'Boyle is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect a debt from her incurred for personal, family or household purposes.

5. Defendant Universal Fidelity, LP ("UFLP") is a debt collection agency with its principal place of business located at 900 Threadneedle Street, Suite 600, Houston, Texas 77079.

6. UFLP is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. UFLP is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. UFLP is a debt collector as defined in 15 U.S.C. § 1692a.

**FACTS**

9. On or about February 6, 2018, UFLP mailed a debt collection letter to Plaintiff regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter, used by UFLP to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A is the first written communication Plaintiff received from UFLP regarding the alleged debt referenced in Exhibit A.

14. Exhibit A contains the following text:

> UNLESS YOU NOTIFY UNIVERSAL FIDELITY LP, WITHIN 30 DAYS AFTER RECEIVING YOUR INITIAL NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, UNIVERSAL FIDELITY LP WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY UNIVERSAL FIDELITY LP IN WRITING WITHIN 30 DAYS FROM RECEIVING YOUR INITIAL NOTICE, UNIVERSAL FIDELITY LP WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGEMENT AND MAIL YOU A COPY OF SUCH JUDGEMENT OR VERIFICATION. IF YOU MAKE A REQUEST TO UNIVERSAL FIDELITY LP IN WRITING WITHIN 30 DAYS AFTER RECEIVING YOUR INITIAL NOTICE, UNIVERSAL FIDELITY LP WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

Exhibit A.

15. Exhibit A contains contradictory, misleading, and confusing representations as to the name of the creditor to whom the alleged debt is owed.

16. Exhibit A contains the following "Account Summary" in an offset box:



Exhibit A.

    17.      The body in Exhibit A also contains the following:

> A recent audit of the delinquent accounts which Universal Fidelity LP received from it's client, The Danbury Mint, has revealed that your account has not been paid.

Exhibit A.

    18.      Exhibit A also contains a payment remittance slip, which contains the following:



. . .

> DEBTOR INFORMATION
> STATEMENT DATE: 02/06/2018
> DEBTOR: ANNE O BOYLE
> RE: WILLABEE AND WARD
> EDP NUMBER: ▮166
> BALANCE DUE: $34.90

Exhibit A.

    19.      Exhibit A states that the name of the creditor is "The Danbury Mint."

3

20. The "Account Summary" and "Debtor Information" sections represent that the letter is being sent "RE: WILLABEE AND WARD" but the body of the letter states that UFLP is mailing Exhibit A based on information "received from its client, The Danbury Mint."

21. The statement that "The Danbury Mint" is UFLP's "client" is a representation that The Danbury Mint is the name of the creditor to whom the debt is owed. *E.g., Deschaine v. Nat'l Enter. Sys.*, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013) ("Naming an entity as 'Client' and a different entity as 'Current Creditor' especially where the 'Client' is named more often than the 'Current Creditor' plausibly could create confusion."); *Walls v. United Collection Bureau, Inc.*, 2012 U.S. Dist. LEXIS 68079, at *5-6 (N.D. Ill. May 16, 2012) (debt collection letter stating one entity was a "Client" and another entity was the "Current Owner" of the debt did not identify the creditor clearly).

22. Upon information and belief, the actual name of the creditor of the alleged debt referenced in Exhibit A is MBI, Inc. ("MBI"). Willabee and Ward is an "operating division" of MBI.

23. On or about August 16, 2017, MBI mailed Plaintiff a debt collection letter and account statement regarding this alleged debt. A copy of this debt collection letter and accompanying account statement is attached to this complaint as Exhibit B.

24. The letter in Exhibit B, which is sent on MBI letterhead, states:

> This is our final notice regarding your delinquent Willabee & Ward account. Your account has now been transferred from Customer Service to the Credit and Collections Department of MBI, Inc., of which Willabee and Ward is an operating division. Our records indicate that your account remains past due for the item(s) referenced on the enclosed statement. If you do not pay this past due balance within 30 days, we will have no choice but to turn your account over to an outside debt collection agency.

. . .

4

> Information concerning your rights appears on the reverse of this letter.

Exhibit B.

25. Although it is difficult to see in the reproduction of Exhibit B because it is printed in very light ink, *see, e.g., Sims v. G.C. Servs., L.P.*, 445 F.3d 959, 961 (7th Cir. 2006), the "information concerning your rights . . . on the reverse of this letter" closely tracks the debt validation notice language in Exhibit A and 15 U.S.C. § 1692g.

26. The account statement in Exhibit B states:

> Make checks payable to
> Willabee & Ward.
>
> . . .
>
> Email: customerservice@willabeeandward.com
>
> Willabee & Ward          47 Richards Avenue          Norwalk, CT 06857

Exhibit B.

27. The account statement in Exhibit B also states that Willabee and Ward is "a division of MBI, Inc., a Delaware Corporation with headquarters at 47 Richards Avenue, Norwalk, Connecticut."

28. Nothing in Exhibit B references "The Danbury Mint."

29. Upon information and belief, "The Danbury Mint" is another "operating division" of MBI that has no relationship to the alleged debt referenced in Exhibit B.

30. The unsophisticated consumer would have no way of knowing that The Danbury Mint and Willabee and Ward are affiliated entities.

31. Being told only that Exhibit A was being sent "RE WILLABEE AND WARD," the unsophisticated consumer would be left assuming that her Willabee and Ward debt had been sold to UFLP's "client," The Danbury Mint. *See Janetos v. Fulton Friedman & Gullace, LLP*,

5

825 F.3d 317, 320 (7th Cir. 2016) ("The letters provided no additional details about the relationship between [the creditor] and [the debt collector].").

32. Moreover, the text in <u>Exhibit A</u> is inconsistent with 15 U.S.C. § 1692g(a), which states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

33. <u>Exhibit A</u> states that the consumer has the right to seek validation of the debt "within 30 days after receiving **your initial notice** that you dispute the validity of this debt or any portion thereof . . . ."

34. Because UFLP states that the validation period begins to run upon receipt of 'your initial notice," UFLP's notice would mislead the unsophisticated consumer to believe that the validation period began before receiving <u>Exhibit A</u> and had, potentially, already expired.

6

35. The unsophisticated consumer is not expected to keep every bill, account, statement, and debt collection letter to confirm that she has not received a debt collection letter from a specific debt collector. *E.g., Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004); *Lukawski v. Client Servs.*, 2013 U.S. Dist. LEXIS 155786, at *13 (M.D. Penn. Oct. 30, 2013) (citing *Fields*).

36. Moreover, the unsophisticated consumer could understand "your initial notice" to mean an "initial" validation notice that was possibly provided by another debt collector, or potentially even the creditor. *See Sanchez v. Jackson*, 2016 U.S> Dist. LEXIS 160776, at **27 (N.D. Ill. Nov. 21, 2016); *see also,* <u>Exhibit B</u>.

37. The reference to the "initial" notice apparently contradicts the actual notice that the consumer is receiving at the time. The unsophisticated consumer, upon seeing the validation notice refer to a 30-day validation period that began to run with "your initial notice," would not understand the notice they were receiving *was* the initial notice, and would be confused and misled about when the 30-day period actually began, and whether it may even have already lapsed. *See, e.g., Francisco v. Doctors & Merchants Credit Serv.*, 1998 U.S. Dist. LEXIS 12234, at *20 (N.D. Ill. July 29, 1998) ("apparent contradictions are thought to evidence per se 'confusingness,' to borrow Judge Posner's phrase.").

38. Failure to provide the correct validation notice pursuant to 15 U.S.C. § 1692g(a) is a *per se* violation of the FDCPA. No analysis of materiality of the error or omission is required. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

7

Case 2:18-cv-01016-JPS   Filed 07/03/18   Page 7 of 14   Document 1

39. For the purposes of Plaintiff's claims under 15 U.S.C. § 1692e, such a false statement is a material false statement, as it imparts in the unsophisticated consumer a false belief about the requirements to dispute a debt.

40. In general, false, misleading or confusing statements about the debt itself, or about the creditor's, debtor's or debt collector's rights or intentions, are all material. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (debt collector violated FDCPA by sending letter that would confuse the unsophisticated consumer about the length of the validation period); *see also, Mikolajczyk v. Universal Fid., LP*, 2017 U.S. Dist. LEXIS 24587, at *11 (E.D. Wis. Feb. 22, 2017) (any representation that would dissuade the unsophisticated consumer "from exercising her unfettered right under the FDCPA to dispute the debt" is material).

41. Plaintiff was confused by Exhibit A.

42. The unsophisticated consumer would be confused by Exhibit A.

### *The FDCPA*

43. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v.*

*Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to

9

encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

44. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

45. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

46. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

47. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

48. 15 U.S.C. § 1692g(a) states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(2) the name of the creditor to whom the debt is owed;

. . .

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt

10

>     collector will obtain verification of the debt or a copy of a judgment against
>     the consumer and a copy of such verification or judgment will be mailed to
>     the consumer by the debt collector;

49. The debt collector must make the 15 U.S.C. § 1692g disclosures in a non-confusing manner. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 317-18 (7th Cir. 2016).

50. 15 U.S.C. § 1692g(b) specifically prohibits communication that overshadows or is inconsistent with the 15 U.S.C. § 1692g(a) disclosures.

51. The Seventh Circuit has stated that each disclosure required by 15 U.S.C. § 1692g(a) must be made "clearly enough that the recipient would likely understand it." *Janetos*, 825 F.3d at 321.

52. Merely including information within a collection letter does not satisfy the requirement that the debt collector disclose that information in a non-confusing manner where the letter also includes representations that may contradict or confuse those disclosures. *Janetos*, 825 F.3d at 323 ("The recipients of these letters would therefore find themselves obliged to guess who currently owned the debts in question. Since the name was on the letters, some might correctly guess that Asset Acceptance was the current creditor, but a lucky guess would have nothing to do with any disclosure the letters provided. Compliance with the clear requirements of § 1692g(a)(2) demands more.").

53. The unsophisticated consumer receiving <u>Exhibit A</u> would be left having to guess the name of the creditor. As in *Janetos*, some might correctly guess that the alleged debt was owed to Willabee and Ward "but a lucky guess would have nothing to do with any disclosure the letter[] provided."

11

54. The unsophisticated consumer receiving Exhibit A would also be left having to guess whether Exhibit A contained the "initial notice." Also as in *Janetos*, some might correctly guess that they still had 30 days to dispute the debt "but a lucky guess would have nothing to do with any disclosure the letter[] provided."

## COUNT I – FDCPA

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. Exhibit A represents the name of the creditor in a way that is false, deceptive, misleading, and confusing to the unsophisticated consumer.

57. Exhibit A states the "client" is The Danbury Mint, an entity that has no relationship to the alleged debt.

58. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692g(a)(2), and 1692g(b).

## COUNT II – FDCPA

59. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

60. Exhibit A states that the consumer has thirty days to dispute the debt from receipt of the "initial notice," which implies to the consumer that she has received some other, prior, validation notice and that the validation period has already begun to run, or may even have already lapsed.

61. Defendant violated 15 U.S.C. §§ 1692g(a), 1692g(a)(3), 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## CLASS ALLEGATIONS

62. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action (c) seeking to collect a debt for personal, family or household purposes, (d) that stated the letter was being mailed "RE: WILLABEE AND WARD," (e) and also stated that UFLP's client was "The Danbury Mint," where the letter in the form of Exhibit A was mailed between July 3, 2017 and July 3, 2018, inclusive, (e) and was not returned by the postal service.

63. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

64. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

65. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

66. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

67. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

68. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 3, 2018 **ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com